**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROGER JUDGE | : CIVIL ACTION |
| | : |
| vs. | : |
| | : NO. 02-CV-6798 |
| JEFFREY BEARD, Commissioner, | : |
| Pennsylvania Department of | : |
| Corrections, WILLIAM STICKMAN, | : |
| Superintendent of the State | : |
| Correctional Institution at | : |
| Greene, ROBERT W. MEYERS, | : |
| Superintendent of the State | : |
| Correctional Institution at | : |
| Rockview, and MICHAEL FISHER, | : |
| Attorney General of the | : |
| Commonwealth of Pennsylvania | : |

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                              **March 13, 2009**

This matter has been brought before the Court on Motion of the Petitioner, Roger Judge, for Partial Summary Judgment as to Claim V of his Petition for Habeas Corpus (Docket No. 62). After careful consideration, the Motion shall be granted for the reasons set forth below.

**History of the Case**

On April 15, 1987, Petitioner was convicted of two counts of first degree murder and one count of possession of an instrument of crime for the deaths of Christopher Outterbridge and Tabitha

Mitchell[1] and sentenced to death following a jury trial in the Philadelphia County Court of Common Pleas.  Following the denial of post-trial motions, the trial judge, the Honorable Albert F. Sabo, formally sentenced Mr. Judge to death on June 12, 1987 in accordance with the jury's sentencing verdict.  Two days later, Petitioner escaped from Holmesburg Prison in Philadelphia and fled to Vancouver, Canada where, on July 13, 1988, he was convicted of two robberies and sentenced to ten years imprisonment.  His Canadian convictions were affirmed on appeal.[2]

On August 11, 1987, while Petitioner was a fugitive, his convictions and death sentences were certified for automatic appeal to the Pennsylvania Supreme Court.  Acting *sua sponte* on December 22, 1989, the Pennsylvania Supreme Court issued a *per curium* order which limited its review to sufficiency of the evidence and propriety of the sentence "as required by Commonwealth v. Zettlemoyer, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L. Ed. 2d 1327, *reh'g denied*, 463 U.S. 1236, 104 S. Ct. 31, 77 L. Ed. 2d 1452..."  See, Commonwealth v. Judge, 530 Pa. 403, 405, 609 A.2d 785, 786, n.4 (1992).  Despite this, Petitioner's attorney raised several

---

[1]  At the time of their deaths on the night of September 14, 1984, Christopher Outterbridge was 18 years of age and Tabitha Mitchell was 15.  Mr. Judge was 22 years old at the time of the murders.

[2]  See, Regina v. Judge, No. CA009747, Court of Appeal for British Columbia, March 1, 1991); Commonwealth v. Judge, 591 Pa. 126, 130, 916 A.2d 511, 513 (2007).

claims of trial error for review.  Acknowledging that it had "the authority to correct errors at trial which the appellant raises," the Supreme Court noted that its "rules expressly provide for the quashing of an appeal when the appellant is a fugitive..., and it is within the discretion of this Court to take such action *sua sponte* ... Additionally, this Court has held that 'a defendant who elects to escape from custody *forfeits* his right to appellate review.'"  Judge, 609 A.2d at 786, (citing Pa.R.A.P. 1972(6), Commonwealth v. Passaro, 504 Pa. 611, 616, 476 A.2d 346, 349 (1984) and Commonwealth v. Tomlinson, 467 Pa. 22, 354 A.2d 254 (1976) (emphasis in original)).  The Court went on to review the case record and found that the evidence produced was sufficient beyond a reasonable doubt to support the first degree murder convictions and that the sentences of death imposed were neither excessive nor disproportionate to the penalty imposed in similar cases.  It therefore affirmed the petitioner's convictions and death sentence.  Judge, 609 A.2d at 790-791.

On June 15, 1993, Petitioner was ordered deported from Canada but the deportation order was made conditional because Petitioner had announced his intention to claim refugee status. Thereafter, he withdrew this claim and the deportation order became effective on June 8, 1994.  However, on January 26, 1995, on recommendation of the Correctional Services of Canada, Mr. Judge's case was reviewed by the National Parole Board, which

ordered that he be detained in Canada to serve out the balance of his sentence or until August 8, 1998.

On November 10, 1997, the petitioner wrote to the Canadian Minister of Citizenship and Immigration requesting ministerial intervention to stay the deportation order against him until such time as the United States sought to extradite him.  Apparently, Petitioner was aware that if the U.S. sought to extradite him, Canada could ask for assurances from the U.S. that he would not be executed.[3]  Via letter dated February 18, 1998, however, the Canadian Minister refused this request.  Petitioner then applied to the Federal Court of Canada for leave to commence an application for judicial review of the Minister's refusal and for a stay of the deportation order and a declaration that his detention in Canada and deportation to the U.S. violated his rights under the Canadian Charter.  This application was summarily denied on June 23, 1998 and Mr. Judge then petitioned the Superior Court of Quebec, which had concurrent jurisdiction with the Canadian Federal Court for identical relief.  That Court, on August 6, 1998, declined to exercise jurisdiction because proceedings had already been undertaken in the Federal Court and the following day, Mr. Judge filed a complaint with the Human Rights Committee of the United Nations claiming that Canada

---

[3]  Contrary to the opinions written in this matter by the Pennsylvania Supreme Court, the United States never sought to extradite Petitioner from Canada.  See, e.g., Commonwealth v. Judge, 568 Pa. 377, 384, 797 A.2d 250, 255 (1992) and Commonwealth v. Judge, 591 Pa. 126, 130, 916 A.2d 511, 513 (2007).

violated articles 6, 7, 10 and 14 of the International Covenant
on Civil and Political Rights ("ICCPR") by deporting him to face
a sentence of death in Pennsylvania.  On August 9, 1998, Canada
deported the petitioner to New York and Pennsylvania thereafter
had him extradited back to the Commonwealth.  Eventually, the
United Nations' Human Relations Committee determined, via
published decision dated August 13, 2003, that Canada had
violated articles 2 and 6 of the ICCPR by deporting the
petitioner from Canada to the U.S. where he faced the death
penalty without receipt of assurances from the U.S. that the
penalty would not be carried out and by failing to afford him the
opportunity to appeal the deportation decision prior to his
having been removed from Canada to the U.S.  Judge v. Canada,
U.N. Human Rights Committee 78th session, CCPR/C/78/D/829/1998
(13 August 2003).

While still confined in Canada, on January 14, 1997, Mr.
Judge had also filed a *pro se* petition in the Philadelphia County
Court of Common Pleas under Pennsylvania's Post Conviction Relief
Act, 42 Pa.C.S. §9542, *et. seq.* which was subsequently amended on
February 16, 1999 after counsel was appointed to represent him.
The Court of Common Pleas dismissed the petition without a
hearing on July 27, 1999, giving as the reason therefor that
Petitioner's fugitive status had forfeited his post-conviction
rights and that decision was affirmed by the Pennsylvania Supreme

5

Court on May 23, 2002.  See, Commonwealth v. Judge, 568 Pa. 377, 797 A.2d 250 (2002).

On August 16, 2002, Petitioner filed a Petition for Writ of Habeas Corpus in this Court, along with a second petition under the PCRA seeking relief under the U.S. Supreme Court's decision in Atkins v. Virginia, 536 U.S. 304 (2002)(holding that U.S. Constitution places significant restrictions on a state's power to execute a mentally retarded offender).[4]  In addition, on October 10, 2003, he filed yet another petition in the state courts captioned *Petition for Statutory Habeas Corpus Relief and Habeas Corpus Relief under Article I, Section 14 of the Pennsylvania Constitution and/or for Statutory Post-Conviction Relief Under the Post Conviction Relief Act* in reliance upon the findings of the U.N. Human Rights Committee that Canada had violated the ICCPR in deporting him to the United States.  This Court then stayed the instant habeas proceedings to enable Petitioner the opportunity to exhaust these claims in the Pennsylvania courts.  In an Opinion dated May 12, 2005, the Philadelphia County Court of Common Pleas determined that because the identical claim had been raised in Petitioner's federal *Habeas Corpus* petition, it need not address the claim and

---

[4]  Given the Pennsylvania Supreme Court's determination that mental retardation was to be determined on the basis of the standards of either the American Association of Mental Retardation or the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM IV") which Petitioner conceded he could not satisfy, he withdrew his claims for PCRA relief under the second petition.

therefore dismissed the PCRA application.  Although it did
consider the violation of international law argument, the
Pennsylvania Supreme Court nevertheless affirmed the dismissal of
Petitioner's third PCRA on the grounds that there was nothing in
the ICCPR itself or in the decisions of the Human Rights
Committee which compelled the Pennsylvania state courts to
enforce the international treaties involved.  Commonwealth v.
Judge, 591 Pa. 126, 916 A.2d 511 (2007).  On November 7, 2007,
the United States Supreme Court denied petitioner's application
for writ of _certiorari_.  Judge v. Pennsylvania, 128 S. Ct. 533,
169 L. Ed. 2d 374 (2007).

It appearing to this Court that the petitioner had then
exhausted his available state remedies, we lifted the stay of
proceedings in this matter on December 12, 2007.  On July 29,
2008, Petitioner filed this motion for partial summary judgment.

## Summary Judgment Standards in Habeas Corpus Cases

As a general rule, petitions for habeas corpus are treated
as civil actions and the Federal Rules of Civil Procedure,
including Rule 56, apply to them.  See, e.g., Wilson v. Beard,
Civ. A. No. 05-2667, 2006 U.S. Dist. LEXIS 56115 at *11, fn. 3
(E.D. Pa. Aug. 9, 2006); Fed. R. Civ. P. 81(a)(4).  Thus,
"summary judgment is appropriate in a habeas case, as in other
cases, 'when the pleadings, depositions, answers to
interrogatories and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" <u>Wilson</u>, <u>supra</u>., quoting <u>Forman v. Cathel</u>, Civ. A. No. 04-5309, 2006 U.S. Dist. LEXIS 18137 (D.N.J. March 23, 2006) and Fed. R. Civ. P. 56(c).

It is of course well-settled that in ruling upon a motion for summary judgment, the courts view the record in the light most favorable to the non-moving party to ascertain whether there is a genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. See, <u>Michaels v. New Jersey</u>, 222 F.3d 118, 121 (3d Cir. 2000); <u>Jones v. School District of Philadelphia</u>, 198 F.3d 403, 409 (3d Cir. 1999).

## **Discussion**

As noted, Petitioner has moved for summary judgment on Claim V of his habeas corpus petition. More particularly, that claim, which is based upon <u>Mills v. Maryland</u>, 486 U.S. 367, 108 S. Ct. 1860, 100 L. Ed. 2d 384 (1988), challenges Mr. Judge's death sentence on the grounds that the trial judge's instructions to the jury erroneously led the jury to believe that it could not return a verdict at the penalty phase of the trial without agreeing unanimously both as to individual mitigating circumstances and the ultimate penalty. Respondents oppose Petitioner's motion for the reason that Petitioner permanently forfeited this claim by escaping during direct appeal and not

8

returning until well after it became final.  Respondents thus assert that as applied in this case, the state fugitive disentitlement (a/k/a fugitive forfeiture) rule was adequate to bar review of Petitioner's <u>Mills</u> claim.  Given that we cannot reach Mr. Judge's <u>Mills</u> claim if it is procedurally barred, we must therefore consider the Respondents' forfeiture argument first.

      *A.  Bar of the Fugitive Forfeiture Rule.*

In keeping with the principle of comity, the Supreme Court has long adhered to the rule that a state prisoner's habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims. <u>Coleman v. Thompson</u>, 501 U.S. 722, 731, 111 S. Ct. 2546, 2554-2555, 115 L. Ed. 2d 640, 656-657 (1991), citing, *inter alia,* <u>Rose v. Lundy</u>, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982). This exhaustion principle was effectively codified at 28 U.S.C. §2254(b)(1), which states as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that -
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
>    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

In addition, a federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Abu-Jamal v. Horn, 520 F.3d 272, 286 (3d Cir. 2008), quoting Lambrix v. Singletary, 520 U.S. 518, 522, 117 S. Ct. 1517, 137 L. Ed. 2d 771 (1997) and Coleman v. Thompson, 501 U.S. 722, 729, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).  A state rule is "adequate" if it was "firmly established, readily ascertainable, and regularly followed at the time of the purported default." Leyva v. Williams, 504 F.3d 357, 366 (3d Cir. 2007), quoting Szuchon v. Lehman, 273 F.3d 299, 327 (3d Cir. 2001).

In support of the instant motion, Petitioner relies in large part on our decision in Kindler v. Horn, 291 F. Supp. 2d 323 (2003), and on the Third Circuit's decision affirming it. Kindler v. Horn, 542 F.3d 70 (3d Cir. 2008).  As we explained procedural default in that case:

> ...[I]f a state's procedural rules bar a petitioner from seeking further relief in the state courts, the exhaustion requirement is satisfied because there is an absence of available State corrective process. Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000), citing McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); 28 U.S.C. §2254 (b)(1)(B)(i).  This is otherwise known as 'procedural default' and it is said to occur when a prisoner's federal claim is barred from consideration in the state courts by an independent and adequate state rule. Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002).  Even so, this does not mean that a federal court may, without more, proceed to the merits.  Instead, claims deemed exhausted because of a state procedural bar may not be considered by the federal courts

10

unless the petitioner establishes "cause and prejudice" or a "fundamental miscarriage of justice" to explain the procedural default.  Id.

"Cause" sufficient to excuse procedural default requires a showing that some objective factor, external to the defense, prevented compliance with state procedural rules.  Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed 2d 397 (1986).  "Actual prejudice" occurs only if an error caused the "actual and substantial disadvantage" of the petitioner.  Riley v. Myers, Civ. A . No. 01-6958, 2002 U.S. Dist. LEXIS 24404, *20 (E.D. Pa. Dec. 18, 2002), quoting U.S. v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982).  The burden of proof is on the petitioner to establish both cause for the default and resulting prejudice.  Id., citing Teague v. Lane 489 U.S. 288, 298, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989).

Alternatively, if the petitioner establishes that the state procedural rule was not independent or adequate, the federal court may proceed to consider the merits of his claim.  See Generally: Gray v. Netherland, 518 U.S. 152, 162, 116 S. Ct. 2074, 2080, 135 L. Ed.2d 457 (1996); Harris v. Reed, 489 U.S. 255, 262-263, 109 S. Ct. 1038, 1043, 103 L. Ed.2d 308 (1989); Wainwright v. Sykes, 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed.2d 594 (1977).  A state rule provides an independent and adequate basis for precluding federal review of a state prisoner's habeas claims only if: (1) the state procedural rule speaks in unmistakable terms; (2) all state appellate courts refused to review the petitioner's claims on the merits; and (3) the state courts' refusal in this instance is consistent with other decisions.  Doctors v. Walters, 96 F.3d 675, 683-684 (3d Cir. 1996); Jones v. Lavan, Civ. A. No. 02-2359, 2002 U.S. Dist. LEXIS 23715, *5 (E.D. Pa. Dec. 9, 2002).  A state procedural ground is not "adequate" unless the procedural rule is "strictly or regularly followed."  Johnson v. Mississippi, 486 U.S. 578, 587, 108 S. Ct. 1981, 1987, 100 L. Ed.2d 575 (1988); Doctor v. Walters, supra.  See Also: Ford v. Georgia, 498 U.S. 411, 423-24, 111 S. Ct. 850, 857-58, 112 L. Ed. 2d 935 (1991).  Nevertheless, the Supreme Court has held that if a state supreme court faithfully has applied a procedural rule in "the vast majority" of cases, its willingness in a few cases to overlook the rule and address a claim on the merits does not mean that it does not apply the procedural rule regularly or consistently.  Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997), citing Dugger v. Adams, 489 U.S. 401, 410, n. 6, 109 S. Ct. 1211, 1217, n.6, 103 L. Ed.2d 435 (1989).

11

> Accordingly, an occasional act of grace by a state court in
> excusing or disregarding a state procedural rule does not
> render the rule inadequate to procedurally bar advancing a
> habeas corpus claim in a district court. <u>Id.</u> <u>See Also</u>:
> <u>Cabrera v. Barbo</u>, 175 F.3d 307, 313 (3d Cir. 1999).  Federal
> courts should generally determine questions of procedural
> default according to the habeas waiver law in effect at the
> time of the asserted waiver. <u>Doctor v. Walters</u>, 96 F.3d at
> 694, citing <u>Reynolds v. Ellingsworth</u>, 843 F.2d 712, 722 (3d
> Cir. 1988). <u>See Also</u>: <u>Jermyn v. Horn</u>, 266 F.3d 257, 278 (3d
> Cir. 2001); <u>Banks v. Horn</u>, 126 F.3d at 212-213; <u>Peterkin v.
> Horn</u>, 176 F. Supp. 2d 342, 253-354 (E.D. Pa. 2001).

<u>Kindler</u>, 291 F. Supp. 2d at 340-341.

<u>Kindler</u> was also a capital case in which the Petitioner

escaped to Canada following his first degree murder conviction in

November 1983.  Kindler escaped in September, 1984, during the

pendency of his post-trial motions and before his formal

sentencing which did not take place until October, 1991,

following his re-capture and return from Canada.  On both direct

appeal and under the Pennsylvania Post Conviction Relief Act,

(PCRA), the Pennsylvania Supreme Court upheld the trial court's

findings that Mr. Kindler had waived his right to raise any

issues of trial error and allegations of ineffective assistance

of counsel as a response to his escape from custody and flight

from the Commonwealth of Pennsylvania.  In response to Kindler's

Petition for Writ of Habeas Corpus in the District Court, the

Commonwealth argued that all of his claims were procedurally

defaulted by virtue of his having escaped and fled thereby

failing to give the Pennsylvania state courts the opportunity to

address and possibly correct the alleged constitutional errors in

his conviction and sentencing and those errors caused by
ineffective assistance of counsel.

In resolving this issue, we examined how the Pennsylvania
state courts applied the fugitive forfeiture rule as of the date
of Kindler's escape on September 20, 1984, and whether it was
strictly and regularly applied at that time.  Our examination was
made considerably easier by the Doctor v. Walters, 96 F.3d 675
(3d Cir. 1996) decision, in which the Third Circuit, after
surveying Pennsylvania Supreme and Superior Court jurisprudence
up through June, 1986, when Doctor escaped, determined that the
fugitive forfeiture rule was neither firmly established nor
regularly applied.  The Doctor decision described Pennsylvania's
fugitive forfeiture rule as follows:

> ... [I]f the defendant is returned to custody while his
> appeal is pending, an appellate court has the discretion to
> hear the appeal, but if the defendant is returned to custody
> after the appeal is dismissed, an appellate court lacks the
> discretion to reinstate and hear the appeal.

Doctor, 96 F.3d at 685, citing Commonwealth v. Jones, 388 Pa.
Super. 22, 564 A.2d 983, 986 (1989) and Commonwealth v. Passaro,
504 Pa. 611, 476 A.2d 346 (1984).

The Commonwealth sought to distinguish Kindler from Doctor
because Kindler's escape resulted in the dismissal of post-
verdict motions that were pending when he fled, arguing that the
dismissed post-verdict motions were analogous to a dismissed
appeal, but the Third Circuit rejected this contention.  Looking

13

to <u>Commonwealth v. Galloway</u>, 460 Pa. 309, 333 A.2d 741 (1975),
the Third Circuit noted that the Pennsylvania Supreme Court in
that case had reinstated supplemental post-verdict motions that
had been dismissed pursuant to the fugitive forfeiture rule
because once the defendant was apprehended, he was returned to
the jurisdiction of the court and would therefore be responsible
for and subject to, the court's judgment.   Reasoned the Court:

> <u>Galloway</u> thus underscores a critical distinction between
> dismissed post-verdict motions and a dismissed final appeal.
> That distinction arises from the fact that after an appeal
> is dismissed, a court no longer retains jurisdiction.
> However, appellate courts can exercise jurisdiction after
> post-verdict motions are dismissed and they therefore can
> exercise discretion to hear the claims of defendant's
> appeal.   Thus, <u>Galloway</u> fatally undercuts the Commonwealth's
> attempt to distinguish Kindler's situation from Doctor's
> based upon differences in the procedural posture at the time
> of their respective escapes.   When Kindler escaped in 1984,
> <u>Galloway</u> had not been overruled.   Accordingly, we conclude
> that, under <u>Doctor</u>, Pennsylvania's fugitive waiver law did
> not preclude the district court from reviewing the merits of
> the claims raised in Kindler's habeas petition.

<u>Kindler</u>, 542 F. 3d at 79-80.

Roger Judge escaped from custody in June, 1987, one full
year after Gary Doctor escaped in June, 1986, and nearly three
years after Joseph Kindler escaped in September, 1984.   Although
we can discern no change in Pennsylvania's application of its
fugitive forfeiture law during this one-year period, we do note
that, unlike Mr. Kindler who was returned following the denial of
his post-verdict motions and before his formal sentencing in
1991, Mr. Judge was not returned to Pennsylvania until *after* his

14

direct appeal had been dismissed.  This case is further unique in that this petitioner escaped a mere two days after the summary dismissal of his post-trial motions and formal sentencing and before the time for filing an appeal expired.  Indeed, it appears that because this was a capital case, the Philadelphia County Clerk of Courts automatically certified this matter for direct appeal to the Pennsylvania Supreme Court in keeping with Pennsylvania state law.  See, 42 Pa. C.S. §9711(h); Pa.R.A.P. 1941.  Petitioner was subsequently apprehended in Canada in early 1988 and convicted of two robberies there for which he was sentenced to two concurrent 10 year terms of imprisonment.

It was after Petitioner's apprehension, conviction and sentencing in Canada that the Pennsylvania Supreme Court acting *sua sponte,* issued its December 22, 1989 *per curium* order limiting the issues to be considered on appeal to the propriety of petitioner's death sentence and the sufficiency of the evidence to convict him.  In so doing, the Pennsylvania Supreme Court acknowledged *that it at that time possessed the discretion*[5] to entertain the merits of Petitioner's appeal.  It was not until 1992 that the Pennsylvania Supreme Court issued its decision on

_____

[5]  Distilled to its essence, "discretion" is "the freedom or right to decide or act according to one's own judgment; freedom of judgment or choice," and thus in some cases the Pennsylvania courts utilized their discretion to find that fugitives had forfeited their appellate rights and in other cases they did not.  See, *e.g.*, *Dictionary.com Unabridged (v.1.1), retrieved 12 February 2009 (Random House, Inc.)*; *Websters II, New Riverside University Dictionary, p. 385 (1994).*

15

Mr. Judge's direct appeal, finding that the evidence was sufficient to convict him of the murder charges and that the sentence of death was appropriate.

Thus, while Mr. Judge's case does not fall within the technical definition of Pennsylvania's fugitive waiver law as articulated by the Court in Doctor, we do not believe that this distinction makes a difference.  This is because, regardless of how the forfeiture law is defined, it was applied to this petitioner when the Pennsylvania Supreme Court chose to exercise its discretion to limit its consideration of his appeal to the propriety of the death sentence and the sufficiency of the evidence against him because he had fled from the jurisdiction. And although we cannot find that the Pennsylvania Supreme Court abused its discretion, that is neither our function nor the question before us.  Again, the threshold question is whether the fugitive forfeiture rule was "firmly established, readily ascertainable and regularly followed at the time of the purported default."  Leyva v. Williams, 504 F.3d 357, 366 (3d Cir. 2007), quoting Szuchon v. Lehman, 273 F.3d 299, 327 (3d Cir. 2001).

This we cannot find.  For one, it appears that Mr. Judge's case was the first time that the Pennsylvania Supreme Court had applied the fugitive forfeiture law in a capital case. Additionally, and as noted by Judge Debevoise in his dissent in Lines v. Larkin, 208 F.3d 153, 169 (3d Cir. 2000), "[d]uring and

16

after the time frame encompassed by these proceedings, Pennsylvania's fugitive forfeiture rule, as interpreted by Pennsylvania's Supreme Court went through a series of transformations."  A quick survey of Pennsylvania jurisprudence throughout this time frame is indeed additionally indicative of the irregularity with which its courts utilized and applied the fugitive forfeiture doctrine.

In Commonwealth v. Luckenbaugh, 520 Pa. 75, 550 A.2d 1317 (1988), the Supreme Court in a *per curium* order effectively held for the first time that the Passaro forfeiture analysis could apply to a defendant who escaped and returned to custody during the pendency of his appeal.  See also, Doctor, 96 F.3d at 686. In his dissent in that case, Justice Zappala observed that:

> [T]he majority's *per curium* reversal of the Superior Court's order without analysis of the underlying issue is unfortunate.  It lends no guidance to the lower courts as to their authority to reinstate appeals.  I conclude that our decision in Passaro neither deprives a tribunal of such authority nor dictates such a result.  Consistent with this Court's prior decision in Commonwealth v. Galloway, supra., which was cited in Passaro, I would hold that the lower courts have the inherent discretion to refuse to hear the appeal of a fugitive and the discretion to reinstate such an appeal.  The Superior Court properly exercised its discretion to reinstate the appeal in this matter and no abuse of that discretion is indicated.

Luckenbaugh, 520 Pa. at 78, 550 A.2d at 1319.

Then in Commonwealth v. Jones, 530 Pa. 536, 610 A.2d 439 (1992), a plurality of the Pennsylvania Supreme Court declared:

> A defendant's voluntary escape acts as a per se forfeiture of his right of appeal, where the defendant is a fugitive at

17

> any time after post-trial proceedings commence.  Such a
> forfeiture is irrevocable and continues despite the
> defendant's capture or voluntary return to custody.  Thus,
> by choosing to flee from justice, appellant forever
> forfeited his right to appeal.

Jones, 610 A.2d at 441.

Jones was decided one day after the Pennsylvania Supreme

Court affirmed this petitioner's murder convictions and sentence

of death on direct appeal.  In doing so, the Pennsylvania Supreme

Court refused to disturb the *per curiam* order which it had

entered on December 22, 1989, limiting review of Mr. Judge's case

to the sufficiency of the evidence and propriety of the sentence

due to his escape from custody.  It noted:

> "[a]lthough this Court has the authority to correct errors
> at trial which the appellant raises, this Court's rules
> expressly provide for the quashing of an appeal when the
> appellant is a fugitive ..., and it is within the discretion
> of this Court to take such action *sua sponte*.  Additionally,
> this Court has held that 'a defendant who elects to escape
> from custody forfeits his right to appellate review.'"
> Judge, 609 A.2d at 786, citing, *inter alia*, Commonwealth v.
> Passaro, 504 Pa. 611, 616, 476 A.2d 346, 349 (1984)
> (citations omitted).

The per se principle announced in Jones appears to have been

short-lived as the Pennsylvania Supreme Court eroded it in a

number of subsequent plurality decisions.  In In the Interest of

J.J., 540 Pa. 274, 656 A.2d 1355 (1995), the Court declared:

> [w]e hold that an appellate court has the inherent authority
> to entertain an appeal of a fugitive who has returned to
> custody during the pendency of an appeal.  An appellate
> court likewise has discretion to reinstate a timely filed
> appeal that was dismissed by that court during his fugitive
> status... We expressly overrule Jones to the extent that it
> removed the authority from our appellate courts to exercise

18

> any discretion over appeals when a defendant had been a
> fugitive at any time during the appellate process.  By
> overruling <u>Jones</u>, we insure that an appellate court will be
> able to exercise the same discretion as a trial court does
> in deciding what will be the appropriate response to a
> defendant's fugitive status during a pending appeal before
> its own court.  <u>J.J.</u>, 540 Pa. at 275, 288, 656 A.2d at 1355,
> 1362.

<u>See also</u>, <u>Commonwealth v. Huff</u>, 540 Pa. 535, 658 A.2d 1340

(1995)(where trial court exercises discretion to consider post-

trial motions on merits, even though defendant had been fugitive

before appealing, appeal from denial of post trial motions must

be considered on merits).  Then, in <u>Commonwealth v. Deemer</u>, 550

Pa. 290, 705 A.2d 827 (1997), a majority of the Court finally

concluded:

> Rather, a fugitive who has returned to the jurisdiction of
> the court should be allowed to exercise his post-trial
> rights in the same manner he would have done had he not
> become a fugitive. If he returns in time for post-trial
> motions, he should be allowed to file them.  If he returns
> after the time for post-trial motions has expired, his
> request to file post-trial motions or to reinstate post-
> trial motions should be denied.  If he became a fugitive
> between post-trial motions and an appeal and he returns
> before the time for appeal has expired and files an appeal,
> he should be allowed to appeal.  If he returns after the
> time for filing an appeal has elapsed, his request to file
> an appeal should be denied.  If he becomes a fugitive after
> an appeal has been filed, his appeal should be decided and
> any fugitive status should be addressed separately.  In
> short, a fugitive who returns to court should be allowed to
> take the system of criminal justice as he finds it upon his
> return:  if time for filing has elapsed, he may not file; if
> it has not, he may.

<u>Deemer</u>, 550 Pa. at 295-296, 705 A.2d at 829.[6]   From this brief survey of the legal landscape of Pennsylvania law and the "shifting sands" underpinning Pennsylvania's fugitive forfeiture doctrine at the time that Roger Judge escaped, we must conclude that the state courts did not rely on an "adequate" procedural rule in denying him merits consideration of his claims of trial error.   Accordingly, the application of the fugitive forfeiture rule in this action does not provide an independent and adequate ground to preclude federal review of the claims which he raises in his habeas corpus petition and we may therefore now consider Petitioner's arguments under <u>Mills v. Maryland</u>, <u>supra</u>.

    *B. Entitlement to Relief under <u>Mills</u>.*

    As earlier noted, the gravamen of Petitioner's motion for summary judgment is his argument that the trial judge's instructions to the jury erroneously led the jury to believe that it could not return a verdict at the penalty phase of the trial without agreeing unanimously both as to individual mitigating circumstances and the ultimate penalty.   Such faulty instructions, Petitioner argues, create a "barrier to the sentencer's consideration of all mitigating evidence" thereby violating the Eighth Amendment.

---

    [6]   Although <u>Deemer</u> continues to be the law today, the <u>Deemer</u> court specifically did not address the question of whether a returned fugitive who is able to offer compelling reasons for his fugitive status (i.e., he was a fugitive for reasons beyond his control) might be allowed an extension of time for filing..." <u>Deemer</u>, at fn.3.

For its part, the Commonwealth again asserts that this Court
is foreclosed from considering the merits of this argument
because Petitioner's trial counsel did not raise it either at
trial or via post-verdict motions and it was for this reason and
due to forfeiture that the Pennsylvania Supreme Court never
considered it on direct appeal.  Rather, the argument was not
asserted until a counseled Petition for Habeas Corpus Relief was
filed on Mr. Judge's behalf pursuant to the Pennsylvania
Constitution and the state Post Conviction Relief Act on or about
February 16, 1999.  Petitioner responds to this assertion by
arguing that his counsel were ineffective in failing to make this
argument earlier.

It is axiomatic that under the Sixth Amendment and the Due
Process clauses, the right to the effective assistance of trial
counsel is critical to protecting the fundamental right of an
accused to a fair trial.  See, Strickland v. Washington, 466 U.S.
668, 684-686, 104 S.Ct. 2052, 2063, 80 L. Ed. 2d 674 (1984);
United States v. Cronic, 466 U.S. 648, 654, 104 S. Ct. 2039,
2044, 80 L. Ed. 2d 657 (1984).  A convicted defendant's claim
that counsel's assistance was so defective as to require reversal
of a conviction or death sentence has two components.
Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.  First, the
defendant must show that counsel's performance was deficient;
this requires showing that counsel made errors so serious that

21

counsel was not functioning as the "counsel" guaranteed the
defendant by the Sixth Amendment.  Id.  Second, the defendant
must show that the deficient performance prejudiced the defense,
and this requires showing that counsel's errors were so serious
as to deprive the defendant of a fair trial, a trial whose result
is reliable.  Id.; Bond v. Beard, 539 F.3d 256, 285 (3d Cir.
2008).  Unless a defendant makes both showings, it cannot be said
that the conviction or death sentence resulted from a breakdown
in the adversary process that renders the result unreliable.  Id.

Performance is measured against an objective standard of
reasonableness under prevailing professional norms.  Rompilla v.
Beard, 545 U.S. 374, 380, 125 S. Ct. 2456, 2462, 162 L. Ed. 2d
360 (2005).  In order to establish prejudice, a defendant need
not demonstrate that the outcome of the proceeding would have
been different, but only that there is a "reasonable probability
that, but for counsel's unprofessional errors, the result of the
proceeding would have been different.  A reasonable probability
is a probability sufficient to undermine confidence in the
outcome."  Marshall v. Hendricks, 307 F.3d 36, 85 (3d Cir. 2002),
quoting Strickland, 466 U.S. at 694.  It is also critical that
courts be "highly deferential" to counsel's reasonable strategic
decisions and guard against the temptation to engage in
hindsight, and that the totality of the evidence before the judge
or jury be considered.  Id.  "Of course, the state of the law is

22

central to an evaluation of counsel's performance at trial.  A
reasonably competent attorney is required to know the state of
the applicable law."   Medina v. DiGuglielmo, 461 F.3d 417, 428
(3d Cir. 2006), quoting Everett v. Beard, 290 F.3d 500, 509 (3d
Cir. 2002).

   In this case, Petitioner's trial took place in April, 1987,
some eight months before the U.S. Supreme Court granted
certiorari and slightly over one year before it issued the Mills
v. Maryland decision on June 6, 1988.  At that time, Petitioner's
direct appeal was pending before the Pennsylvania Supreme Court.
Although the U.S. Supreme Court has since declared that Mills
announced a new rule of constitutional criminal procedure such
that it could not be applied retroactively to cases on collateral
review, that declaration was not made until 2004.  Beard v.
Banks, 542 U.S. 406, 124 S. Ct. 2504, 159 L. Ed. 2d 494 (2004).
Prior to this decision, the Third Circuit had concluded that
Mills was merely an extension of the principles laid out in,
inter alia, Lockett v. Ohio, 438 U.S. 586, 98 S. Ct. 2954, 57 L.
Ed. 2d 973 (1978) and Eddings v. Oklahoma, 455 U.S. 104, 102 S.
Ct. 869, 71 L. Ed. 2d 1 (1982), requiring that sentencing juries
be permitted to consider any relevant mitigating factors or
circumstances including "any aspect of a defendant's character or
record and any circumstances of the offense that the defendant
proffers as a basis for a sentence less than death."   See, e.g.,

23

Lockett, 438 U.S. at 604, 98 S. Ct. at 2954.   Thus, it appears
that despite the fact that Mills was not decided until a year
after this petitioner was tried and convicted, its foundations
were in place and the state of the law was such that the issues
addressed in Mills were "percolating" at the time of Mr. Judge's
trial.  As the Third Circuit noted in Everett v. Beard, 290 F.3d
at 513:

> "[c]ounsel's status as a reasonably competent attorney is
> not strictly confined to the law as enunciated by the
> decisions of the jurisdiction's highest court.  More is
> expected from a reasonably competent attorney, especially
> one in a major criminal case, than merely to parrot Supreme
> Court cases. ... Instead, a reasonably competent attorney
> will have reason to rely on authority, especially favorable
> authority, even if it has not yet been enunciated by the
> United States Supreme Court or the state's supreme court."

We therefore find that reasonably competent defense counsel
would or should have been aware of the ongoing developments in
the state of capital law in April, 1987, and subsequent thereto.
We simply cannot conceive of any strategic reason to forego
raising a Mills - type objection, as the worst that could have
happened would have been its denial.  Thus, we are constrained to
find the performance of Petitioner's trial attorney and
particularly his counsel on direct appeal (who had at least until
December 22, 1989, when the Pennsylvania Supreme Court issued its
sua sponte order limiting the issues to be considered on appeal)
to have been deficient to the obvious detriment and prejudice of

24

Mr. Judge[7] and accordingly, that petitioner's counsel were ineffective under <u>Strickland</u>.[8]

Specifically, the threshold question posed to the Supreme Court in <u>Mills</u> was the propriety of the manner in which Maryland's capital sentencing statute was explained to the jury. Petitioner in that case argued that the court's instruction and jury verdict form were unconstitutional because they erroneously suggested to the jury that in order to give mitigating evidence any effect and award a sentence less than death, it must unanimously find the existence of a mitigating circumstance. Following a careful review of the jury instructions and verdict form, the U.S. Supreme Court concluded "...that there is a

---

[7]   Indeed, Mr. Judge's "penalty phase proceeding would have reached a different result if one juror had voted to impose a sentence of life imprisonment rather than the death penalty." <u>Bond v. Beard</u>, 539 F.3d at 285.

[8]   Alternatively, and as previously noted, the Pennsylvania Supreme Court *did* consider the propriety of Petitioner's sentence pursuant to the Sentencing Code, which requires affirmance of the death sentence unless the Court should find that the sentence was the product of passion, prejudice or any other arbitrary factor, excessive or disproportionate to that entered in similar cases or if the evidence should fail to support the finding of at least one aggravating circumstance. 42 Pa. C.S. §9711(h).  We would agree with Judge Giles' reasoning in <u>Yarris v. Horn</u>, 230 F. Supp. 2d 577, 590-591 (E. D. Pa. 2002),

   "[a] jury instruction containing a Constitutional error is an arbitrary factor," and  "[t]he Pennsylvania Supreme Court was obligated by statute and its own precedent to review the record for just such a Constitutional error as the allegedly impermissible jury instruction. Therefore, [as] petitioner's <u>Mills</u> claim falls into the type of claims required to be raised and decided *sua sponte* by the Pennsylvania Supreme Court, ... the Court is deemed to have considered the jury instruction and concluded it was, as it stood constitutionally firm.  While it is not decided on the merits here, it is noted that the <u>Mills</u> claim clearly was exhausted as a matter of law and is now properly before this court."

substantial probability that reasonable jurors, upon receiving
the judge's instructions in this case and in attempting to
complete the verdict form as instructed, well may have thought
they were precluded from considering any mitigating evidence
unless all 12 jurors agreed on the existence of a particular such
circumstance.  Under our cases, the sentencer must be permitted
to consider all mitigating evidence.  The possibility that a
single juror could block such consideration and consequently
require the jury to impose the death penalty, is one we dare not
risk."   Mills, 486 U.S. at 384, 108 S. Ct. at 1870.

Both this court and the Third Circuit have had numerous
opportunities to consider the constitutionality of capital jury
instructions and verdict forms emanating out of the Pennsylvania
state courts throughout the 1980's, *vis-a-vis* the Mills decision.
Indeed, in three of those recent decisions, Kindler, Frey and
Abu-Jamal, all supra, the Third Circuit granted *habeas* relief
from the sentences of death imposed on the petitioners in those
cases.  A comparison of the jury instructions given and the
verdict form used in this case with those given in those cases
compels us to declare that this petitioner is likewise entitled
to relief from his death sentence under Mills.  To illustrate,
the jury in Mr. Judge's case received the following instructions
from Judge Sabo:

All right, Members of the Jury, you must now decide whether
the Defendant is to be sentenced to death or life

26

imprisonment.  The sentence will depend upon your findings
concerning aggravating and mitigating circumstances.  The
Sentencing Code provides that the verdict must be a sentence
of death if the Jury unanimously finds at least one
aggravating circumstance and no mitigating circumstance.
Or, if the Jury unanimously finds one or more aggravating
circumstance which outweighs any mitigating circumstances.
The verdict must be a sentence of life imprisonment in all
other cases.  The Sentencing Code defines the aggravating
and mitigating circumstances.

                              .....

Now the Commonwealth has the burden of proving aggravating
circumstances beyond a reasonable doubt.  The Defendant has
the burden of proving mitigating circumstances but only by a
preponderance of the evidence.  this is a lesser burden of
proof than beyond a reasonable doubt.  A preponderance of
the evidence exists where one side is more believable than
the other side.  All the evidence from both sides, including
the evidence that you heard earlier during the trial in
chief as to aggravating or mitigating circumstances is
important and proper for you to consider.  You should not
decide out of any feeling of vengeance or prejudice towards
the Defendant.  As I previously told you, it is entirely up
to the Defendant whether to testify and you must now draw
any adverse inference from his silence.

Now the verdict is for you, Members of the Jury.  Remember
that you are not really recommending a punishment.  The
verdict you return will actually fix the punishment at death
or life imprisonment.  Remember again that your verdict must
be unanimous.  It cannot be reached by a majority vote or by
any person.  Remember that your verdict must be a sentence
of death if you unanimously find at least one aggravating
circumstance and no mitigating circumstance, or if you
unanimously find one or more aggravating circumstances which
outweigh any mitigating circumstances.  In all other cases,
your verdict must be a sentence of life imprisonment.

(N/T/ 4/15/87, 80, 82-83).

    The instructions given to Joseph Kindler's jury were

strikingly similar:

        Now, before the jury retires to consider the sentencing
        verdict, the court shall instruct the jury on the following

matters: 1, the aggravating circumstances specified in subsection "D" as to which there is some evidence and you have them there.  Then the mitigating circumstances specified in subsection "E" as to which there is some evidence.

Now, the aggravating circumstances must be proved by the Commonwealth beyond a reasonable doubt.  Mitigating circumstances must be proved by the defendant by a preponderance of the evidence.  A preponderance of the evidence is somewhat less proof than is required for a reasonable doubt.

Now, the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance specified in that list, subsection "D" and no mitigating circumstances or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances.

The verdict must be a sentence of life imprisonment in all other cases.  The court may in its discretion discharge the jury if it is of the opinion that further deliberation will not result in a unanimous agreement as to the sentence, in which case the court shall sentence the defendant to life imprisonment.  The court shall instruct the jury on any other matters that may be just and proper under the circumstances....

In <u>Abu-Jamal</u>, Judge Sabo's instructions virtually mirror those given to Roger Judge's jury:

Members of the Jury, you must now decide whether the Defendant is to be sentenced to death or life imprisonment. The sentence will depend upon your findings concerning aggravating and mitigating circumstances.  The Crimes Code provides that a verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance and no mitigating circumstance, or if the jury unanimously finds one or more aggravating circumstance which outweighs any mitigating circumstances.

The verdict must be a sentence of life imprisonment in all other cases.... The Commonwealth has the burden of proving aggravating circumstances beyond a reasonable doubt.  The Defendant has the burden of proving mitigating circumstances

28

but only by a preponderance of the evidence.  this is a
lesser burden of proof than beyond a reasonable doubt.  A
preponderance of the evidence exists where one side is more
believable than the other side....

Now the verdict is for you, members of the jury.  Remember
and consider all of the evidence giving it the weight to
which it is entitled.  Remember that you are not really
recommending a punishment.  The verdict you return will
actually fix the punishment at death or life imprisonment.
Remember again that your verdict must be unanimous.  It
cannot be reached by a majority vote or by any percentage.
It must be the verdict of each and everyone [sic] of you.

Remember that your verdict must be a sentence of death if
you unanimously find at least one aggravating circumstance
and no mitigating circumstance.  Or, if you unanimously find
one or more aggravating circumstances which outweigh any
mitigating circumstances.  In all other cases, your verdict
must be a sentence of life imprisonment.

And finally, the charge given in <u>Frey</u> is also nearly
identical:

Members of the Jury, you must now decide whether this
Defendant should be sentenced to death or life imprisonment.
The sentence will depend upon your findings concerning
aggravating and mitigating circumstances.  The Crimes Code
provides that *the* verdict must be a sentence of death if the
jury unanimously finds at least one aggravating circumstance
and no mitigating circumstance, or if the jury unanimously
finds one or more aggravating circumstance which outweigh
any mitigating circumstances.  The verdict must be a
sentence of life imprisonment in all other cases.

...

Remember that your verdict must be a sentence of death if
you unanimously find at least one aggravating circumstance
and no mitigating circumstance.  Or, if you unanimously find
one or more aggravating circumstances which outweigh any
mitigating circumstances.  In all other cases, your verdict
must be a sentence of life imprisonment.

A quick examination of the verdict form used here with that

29

used in <u>Kindler</u>[9] is equally instructive.   In Mr. Kindler's case,
the form looked like this:

>    We, the jury empaneled in the above entitled case, having
> heretofore determined that the defendant, is guilty of murder of
> the first degree, do hereby find:

> <u>AGGRAVATING CIRCUMSTANCE(S)</u>

> The victim was a fireman, peace officer, or public servant
> concerned in official detention who was killed in the
> performance of his duties                              ( )

> The defendant paid or was paid by another person or had
> contracted to pay or be paid by another person or has
> conspired to pay or be paid by another person for the
> killing of the victim                                  ( )

> The victim was being held by the defendant for ransom or
> reward, or as a shield or hostage                      ( )

> The death of the victim occurred while defendant was engaged
> in the hijacking of an aircraft                        ( )

> The victim was a prosecution witness to a murder or other
> felony committed by the defendant and was killed for the
> purpose of preventing his testimony against the defendant in
> any grand jury or criminal proceeding involving such
> offenses                                               ( )

> The defendant committed a killing while in the perpetration
> of a felony                                            ( )

> In the commission of the offense the defendant knowingly
> created a grave risk of death to another person in addition
> to the victim of the offense                           ( )

> The offense was committed by means of torture          ( )

> The defendant has a significant history of felony
> convictions involving the use or threat of violence to the
> person                                                 ( )

_____

[9]   And again, very slight differences exist between the verdict slips
used in in the instant matter, <u>Kindler</u> and <u>Abu-Jamal</u>.  <u>See</u>, <u>Abu-Jamal</u>, 520
F.3d at 301.

The defendant has been convicted of another Federal or State offense, committed either before or at the time of the offense at issue for which a sentence of life imprisonment or death was imposable or the defendant was undergoing a sentence of life imprisonment for any reason at the time of the commission of the offense                                    ( )

MITIGATING CIRCUMSTANCE(S)

_____The defendant has no significant history of prior criminal convictions                                                        ( )

The defendant was under the influence of extreme mental or emotional disturbance                                                  ( )

The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired                              ( )

The age of the defendant at the time of the crime ( )

The defendant acted under extreme duress, although not such duress as to constitute a defense to prosecution under Section 309 (relating to duress), or acted under the substantial domination of another person                      ( )

The victim was a participant in the defendant's homicidal conduct or consented to the homicidal acts            ( )

The defendant's participation in the homicidal act was relatively minor                                                      ( )

Any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense                                                          ( )

_____

The aggravating circumstance(s) outweigh the mitigating circumstance(s)              YES ( )    NO ( )

_____

We the jury render the following sentencing verdict:

            DEATH                     ( )
            LIFE IMPRISONMENT    ( )

31

The verdict slips[10] used in this case provided as follows:

We, the jury, having heretofore determined that the above-named defendant is guilty of murder of the first degree, do hereby further find:

1.    ____  at least one aggravating circumstance and no mitigating circumstance.  The aggravating circumstance(s) is/are _____.

2.    ____  one or more aggravating circumstance(s) which outweigh any mitigating circumstance(s).  The aggravating circumstance(s) is/are _____.

      The mitigating circumstance(s) are _____.

3.    ____  no aggravating circumstance; or mitigating circumstance(s) which outweigh any aggravating circumstance(s).

      The aggravating circumstance(s) is/are _____.

      The mitigating circumstance(s) is/are _____.

THEREFORE, we, the jury, unanimously sentence the defendant to:

      ____  death

      ____  life imprisonment.

_____         _____
DATE                                     FOREMAN

_____

      [10]  There being two victims in this action, two identical verdict slips were issued to Mr. Judge's jury.

AGGRAVATING CIRCUMSTANCE(S)

(1)  The victim was a fireman, peace officer, or public
     servant concerned in official detention who was killed
     in the performance of his duties.            ( )

(2)  The defendant paid or was paid by another person or had
     contracted to pay or be paid by another person or has
     conspired to pay or be paid by another person for the
     killing of the victim.                       ( )

(3)  The victim was being held by the defendant for ransom
     or reward, or as a shield or hostage.        ( )

(4)  The death of the victim occurred while defendant was
     engaged in the hijacking of an aircraft.     ( )

(5)  The victim was a prosecution witness to a murder or
     other felony committed by the defendant and was killed
     for the purpose of preventing his testimony against the
     defendant in any grand jury or criminal proceeding
     involving such offenses.                     ( )

(6)  The defendant committed a killing while in the
     perpetration of a felony.                    ( )

(7)  In the commission of the offense the defendant
     knowingly created a grave risk of death to another
     person in addition to the victim of the offense. ( )

(8)  The offense was committed by means of torture.  ( )

(9)  The defendant has a significant history of felony
     convictions involving the use or threat of violence to
     the person.                                  ( )

(10) The defendant has been convicted of another Federal or
     State offense, committed either before or at the time
     of the offense at issue for which a sentence of life
     imprisonment or death was imposable or the defendant
     was undergoing a sentence of life imprisonment for any
     reason at the time of the commission of the offense.
                                                  ( )

MITIGATING CIRCUMSTANCE(S)

_____(1)   The defendant has no significant history of prior
            criminal convictions.                         ( )

(2) The defendant was under the influence of extreme mental
or emotional disturbance.                                 ( )

(3)   The capacity of the defendant to appreciate the
      criminality of his conduct or to conform his conduct to
      the requirements of law was substantially impaired. ( )

(4)   The age of the defendant at the time of the crime. ( )

(5)   The defendant acted under extreme duress, although not
      such duress as to constitute a defense to prosecution
      under Section 309 (relating to duress), or acted under
      the substantial domination of another person.      ( )

(6)   The victim was a participant in the defendant's
      homicidal conduct or consented to the homicidal acts.
                                                          ( )

(7)   The defendant's participation in the homicidal act was
      relatively minor.                                   ( )

(8)   Any other evidence of mitigation concerning the
      character and record of the defendant and the
      circumstances of his offense.                       ( )
_____

After deliberating, the jury in Mr. Judge's case found two

aggravating circumstances to have existed: number 7 (grave risk

of death to another in addition to the victim) and number 10

(prior conviction of another Federal or State offense committed

either before or at time of the offense at issue...).  It found

one mitigating circumstance: that the defendant was under the

influence of extreme mental or emotional disturbance.

As was the case in Kindler, Frey and Abu-Jamal, we observe

that the importance of a unanimous finding was discussed within

very close proximity to the mitigating circumstances clause and
that there was no discussion or directive that the jury need *not*
be unanimous in finding a particular mitigating circumstance to
exist.   As in the comparison cases, in the charge at issue here,
"'unanimous' modifies 'finds' and creates a reasonable likelihood
that the jurors erroneous believed that mitigating and
aggravating circumstances both had to be unanimously agreed
upon."   Kindler, 542 F.3d at 83.   From this, we must conclude
that there is a substantial probability that the jurors in Mr.
Judge's case may well have also thought they were precluded from
considering any mitigating evidence unless all 12 of them agreed
on the existence of a particular such circumstance.   As Mills
directs, "the possibility that a single juror could block such
consideration and consequently require the jury to impose the
death penalty, is one we dare not risk."   Mills, 486 U.S. at
384, 108 S. Ct. at 1870.   Accordingly, we shall grant the
petitioner's motion for summary judgment, issue the writ of
habeas corpus on this point and direct that Mr. Judge be given
either a new sentencing hearing or that he be sentenced to a term
of life imprisonment.

        An order follows.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
ROGER JUDGE                      : CIVIL ACTION
                                 :
     vs.                         :
                                 : NO. 02-CV-6798
JEFFREY BEARD, Commissioner,     :
Pennsylvania Department of       :
Corrections, WILLIAM STICKMAN,   :
Superintendent of the State      :
Correctional Institution at      :
Greene, ROBERT W. MEYERS,        :
Superintendent of the State      :
Correctional Institution at      :
Rockview, and MICHAEL FISHER,    :
Attorney General of the          :
Commonwealth of Pennsylvania     :
```

### ORDER

AND NOW, this        13th        day of March, 2009, upon consideration of Petitioner's Motion for Partial Summary Judgment (Docket No. 62) on Claim V of his Petition for Writ of Habeas Corpus and Respondents' Answers thereto, it is hereby ORDERED that the Motion is GRANTED and the Petition is GRANTED on Claim V of the Petition for Writ of Habeas Corpus which raises the following ground:

1.  that the instructions given to the jury in the sentencing portion of the trial were in violation of the rule decreed in Mills v. Maryland, supra.

IT IS FURTHER ORDERED that the execution of the writ of habeas corpus is STAYED for 180 days from the date of this Order,

during which time the Commonwealth of Pennsylvania may conduct a new sentencing hearing in a manner consistent with this Memorandum Opinion.  If, after 180 days, the Commonwealth of Pennsylvania shall not have conducted a new sentencing hearing, the writ shall issue and the Commonwealth shall sentence Petitioner to life imprisonment.

                                        BY THE COURT:


                                        s/J. Curtis Joyner
                                        J. CURTIS JOYNER,        J.